# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

JOSEPH BENJAMIN, EUNIDE
BENJAMIN, BERNEIDE J. BENJAMIN,
and JERICH07 ARNAUD PROJECTS,
INC.,

    Plaintiffs,

    vs.                  CV 213-150

AMERICAN AIRLINES, INC.,

    Defendant.

## ORDER

Presently before the Court is Defendant's Motion to Dismiss. Dkt. No. 6. Upon due consideration, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Factual Background

### A. Family Books a Flight

This case is predicated upon alleged unlawful discrimination against airline passengers.[1] Plaintiffs Joseph Benjamin and Eunide Benjamin (collectively, "the parents") are married. Dkt. No. 1 ¶ 14. They are black and were born in

---

[1] The factual background is drawn from the Complaint, which, for the purposes of this motion, is accepted as true.

Haiti, although they are now naturalized United States citizens. Id. ¶¶ 14, 16. They have one daughter, Plaintiff Berneide J. Benjamin, who was born in the United States. Id. ¶ 15.

On May 4, 2012, the family and Plaintiff Jerich07 Arnaud Projects, Inc. ("the company") entered into a contract and bought round-trip airline tickets from Defendant American Airlines, Inc. ("the airline"). Id. ¶¶ 23, 26. The family and company were travelling to deliver medicine to people in Haiti. Id. ¶ 25.

The parents booked a trip from Miami, Florida to Port-au-Prince, Haiti, while the daughter booked a trip from Jacksonville, Florida through Miami and then to Port-au-Prince. Id. ¶ 24. The daughter purchased a trip with this itinerary because the airline prohibited her from purchasing a "round tip" ticket in which she would leave from Miami to Haiti and return to Jacksonville. See id. ¶ 27.

B. The Trip and Trouble

1. Forced Purchase of Another Ticket

The family alleges that they informed the airline prior to the flight that the daughter would not fly the Jacksonville-to-Miami leg of the trip, but would fly the remainder of the itinerary. See id. ¶ 28. When they arrived at the Miami airport, however, the airline's employees "refused to honor" the

AO 72A
(Rev. 8/82)

daughter's ticket and said that it had sold the seat to another person. Id. ¶ 30.

The family complained to the ticketing agent, who summoned his supervisor, a man named "Louis." Id. ¶ 31. Louis was Hispanic and spoke with a thick accent. Id. ¶ 32. Yet, he insulted the family and their guests by saying that they "needed to get an interpreter because they could not speak or understand English." Id. Louis's rudeness "mortified and humiliated" the family. Id. ¶ 33.

The airline forced the family to purchase another ticket for the daughter to get to Haiti. Id. ¶¶ 34-35. The ticket cost more than $1,000—that is, more than double the original price. Id. ¶ 34. Although the airline purportedly guaranteed the daughter a seat on the next flight to Port-au-Prince, Plaintiffs claim that the airline intentionally did not tell the family that they had only purchased a standby ticket and that all the flights to Port-au-Prince that day were sold out. Id. ¶¶ 36-39. Instead of being placed on the next flight, the daughter was stranded at the Miami airport for nearly two days. Id. ¶¶ 40-41.

2. The Airline's Lack of Communication

While the daughter was waiting, Plaintiffs allege that the airline did not care about the daughter's welfare or the parents' concern about their "missing daughter" by "refus[ing]"

to communicate with the parents about her location or condition. Id. ¶¶ 42-44. The lack of communication caused "unwarranted heartache, stress, and confusion." Id. ¶ 45. Because the parents did not know the whereabouts of their daughter, they filed a missing person's report in Haiti and the United States. Id. ¶ 46. Likewise, the daughter was distressed: she "pleaded" with airline employees to help her contact her parents, but the employees either ignored her or told her to sit down. See id. ¶¶ 47-48.

### 3. Plaintiffs' Resulting Injuries

When the daughter was finally placed on a flight two days after purchasing the second ticket, the parents were not told about the flight. Id. ¶¶ 49, 51. Instead, the parents learned about their daughter's arrival "by happening to run into" the daughter at the Port-au-Prince airport. Id. ¶ 50. Because of the two day delay, the daughter "missed the most meaningful portion" of the mission trip, her luggage was destroyed, and the company failed to get medication to certain people. Id. ¶¶ 52, 56. The family never received a refund for the second ticket. Id. ¶ 53. Moreover, the mother allegedly "suffer[ed] physical complications from a heart attack" because of the airline's "outrageous conduct," and the daughter became ill from "needless stress." Id. ¶¶ 54-55.

## II. Procedural Background

On October 10, 2013, Plaintiffs Joseph Benjamin, Eunide Benjamin, Berneide Benjamin, and Jerich07 Arnaud Projects, Inc. filed suit against Defendant American Airlines, Inc.   Dkt. No. 1.   The Complaint asserts six claims for relief: breach of contract (Count 1); public accommodation discrimination in violation of Title II of the Civil Rights Act of 1964 (Count 2); violation of 42 U.S.C. § 1981 and the Civil Rights Act of 1866 (Count 3); violation of 42 U.S.C. § 1985 and the Civil Rights Act of 1871 (Count 4); intentional infliction of emotional distress (Count 5); and attorney's fees pursuant to 42 U.S.C. § 1988 (Count 6).   Id. ¶¶ 59-136

On February 26, 2014, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   Dkt. No. 6.   Defendant's motion is fully briefed. Dkt. Nos. 6; 15; 17.

## III. Legal Standard

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must construe the plaintiff's complaint in the light most favorable to the plaintiff and accept all well-pleaded facts alleged in the complaint as true.   Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).   Although a complaint need not contain detailed factual allegations, it must contain

sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## IV. Discussion

### A. Breach of Contract (Count 1)

#### 1. Determining the Montreal Convention's Applicability

Defendant argues that the Montreal Convention preempts Plaintiffs' breach-of-contract claim. The Montreal Convention[2] "sets forth uniform rules for claims that arise out of incidents that occur during international air transportation." Marotte v. Am. Airlines, Inc., 296 F.3d 1255, 1258-59 (11th Cir. 2002). It came into force on November 4, 2003, and succeeded the Warsaw Convention. Bassam v. Am. Airlines, 287 F. App'x 309, 312 (5th Cir. 2008) (per curiam); Montreal Convention art. 55. "As a treaty of the United States, the Convention is considered . . .

---

[2] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000).

AO 72A
(Rev. 8/82)

the supreme law of the land." Best v. BWIA W. Indies Airways Ltd., 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008).

Although the Warsaw Convention no longer applies to claims arising after November 2003, the caselaw developed under it is regarded as applicable in the interpretation of the Montreal Convention's equivalent language. Jacob v. Korean Air Lines Co., No. 12-62384-CIV, 2014 WL 243150, at *7 (S.D. Fla. Jan. 13, 2014); Ugaz v. Am. Airlines, Inc., 576 F. Supp. 2d 1354, 1360 (S.D. Fla. 2008); Serrano v. Am. Airlines, Inc., No. CV 08-2256 AHM(FFMx), 2008 WL 2117239, at *3 (C.D. Cal. May 15, 2008); see also Christopher E. Cotter, Recent Case Law Addressing Three Contentious Issues in the Montreal Convention, 24 No. 4 Air & Space L. 9, 9 (2012) ("The drafters of the Montreal Convention tried wherever possible to embrace the language of the original Warsaw Convention and its various amendments so as not to disrupt existing jurisprudence."). This is despite the Montreal Convention's greater focus on consumer protection and equitable compensation. Tory A. Weigand, Recent Developments Under the Montreal Convention, 77 Def. Couns. J. 443, 443-44 (2010).

The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention art. 1(1). "[I]nternational carriage" means, as it pertains to this case:

> any carriage in which, according to the agreement
> between the parties, the place of departure and
> the place of destination, whether or not there be
> a break in the carriage or a transhipment, are
> situated . . . within the territory of a single
> State Party if there is an agreed stopping place
> within the territory of another State, even if
> that State is not a State Party.

Montreal Convention art. 1(2). Because Plaintiffs bought round-trip tickets in the United States with an agreed stopping place in Haiti, Plaintiffs' flights involved international carriage as defined by the Montreal Convention. See, e.g., In re Air Crash at Lexington, Ky., Aug. 27, 2006, 501 F. Supp. 2d 902, 908 (E.D. Ky. 2007) (determining that the Montreal Convention applies to a "round-trip ticket from the United States with an agreed upon stop in St. Lucia"). However, the Montreal Convention's effect on this case depends on whether Plaintiffs' causes of action fall within the Convention's scope.

To determine "whether a claim falls within the scope of the Convention, courts 'are directed to look to its liability provisions.'" Oparaji v. Virgin Atl. Airways, Ltd., No. 04-CV-1554(FB), 2006 WL 2708034, at *2 (E.D.N.Y. Sept. 19, 2006) (brackets omitted) (quoting King v. Am. Airlines, Inc., 284 F.3d 352, 358 (2d Cir. 2002) (Sotomayor, J.)). The Convention imposes three categories of strict liability on air carriers, only one of which is pertinent to Defendant's motion, see infra Part IV.A.2. Serrano, 2008 WL 2117239, at *3; Knowlton v. Am.

Airlines, Inc., No. RDB-06-854, 2007 WL 273794, at *2 (D. Md. Jan. 31, 2007). Where one of these categories is applicable, the treaty "preempts the remedies of a signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case." Best, 581 F. Supp. 2d at 362.

Although any state claim that falls within the scope of a liability provision is preempted, there is a split of authority on whether an even wider set of claims is preempted. Some courts have found complete preemption under the Convention. E.g., Husmann v. Trans World Airlines, Inc., 169 F.3d 1151, 1153 (8th Cir. 1999); Fadhliah v. Société Air France, No. 2:13-cv-06142-ODW(AJWx), 2013 WL 6571601, at *5-6 (C.D. Cal. Oct. 1, 2013); Jones v. USA 3000 Airlines, No. 4:08-CV-1855(CEJ), 2009 WL 330596, at *3 (E.D. Mo. Feb. 9, 2009) (applying Husmann, 169 F.3d at 1153); Schaefer-Condulmari v. U.S. Airways Grp., Inc., No. 09-1146, 2009 WL 4729882, at *8-10 (E.D. Pa. Dec. 8, 2009); Knowlton, 2007 WL 273794, at *5. In contrast, a trending majority finds preemption not absolute, but instead "extends no further than the Convention's own substantive scope."[3] Serrano, 2008 WL 2117239, at *4 (quoting El Al Israel Airlines, Ltd. v.

---

[3] Where a court concludes that there is not complete preemption under the Montreal Convention, the Convention's applicability acts as an affirmative defense. Beach-Mathura v. Am. Airlines, Inc., No. 08-21925-CIV, 2010 WL 1038563, at *1 n.1 (S.D. Fla. Mar. 19, 2010); Shah v. Kuwait Airways Corp., No. 08Civ.7371(LAP)(JCF), 2012 WL 1631624, at 1 n.1 (S.D.N.Y. May 7, 2012), adopted by 2012 WL 3055652 (July 26, 2012); see also Dkt. No. 6, at 3 (stating how an affirmative defense should be treated in assessing a motion to dismiss).

AO 72A
(Rev. 8/82)

*Tsui Yuan Tseng*, 525 U.S. 155, 172 (1999)); *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 781 (7th Cir. 2008); *Constantino v. Continental Airlines, Inc.*, No. 13-cv-1770(CCC), 2014 WL 2587526, at *3-4 (D.N.J. June 9, 2014); *DeJoseph v. Continental Airlines, Inc.*, No. 2:13-7714(KM)(MAH), 2014 WL 1891407, at *8 (D.N.J. May 12, 2014); *Narkiewicz-Laine v. Scandinavian Airlines Sys.*, 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008); *Vigilant Ins. Co. v. World Courier, Inc.*, No. 07CV194(CM), 2008 WL 2332343, at *4 (S.D.N.Y. June 4, 2008). The Court will not attempt to rehash the merits for each position. Instead, the Court simply adopts the majority approach—as thoroughly reasoned in *Serrano v. American Airlines, Inc.*, No. CV 08-2256 AHM(FFMx), 2008 WL 2117239 (C.D. Cal. May 15, 2008)—and strictly applies the Supreme Court's statement that the Warsaw Convention's "preemptive effect on local law . . . extends no further than the Convention's own substantive scope," *Tsui Yuan Tseng*, 525 U.S. at 158.

2. Article 19 and Breach-of-Contract Claims

In its motion to dismiss, Defendant focuses exclusively on Article 19 and its preemptive force. Dkt. No. 6, at 9-12. Article 19 provides that "[t]he carrier is liable for damage occasioned by delay in the carriage by air of passengers,

baggare or cargo."[4] Montreal Convention art. 19. Although the term is not defined by the Convention and has been left to the courts for interpretation, "delay" contemplates a situation where "the air carrier properly delivered baggage or persons to the appropriate destination but it did so in [an] untimely manner." Vumbaca v. Terminal One Grp. Ass'n L.P., 859 F. Supp. 2d 343, 366 (E.D.N.Y. 2012).

By its plain language, Article 19 governs only claims for delay, not non-performance of a contract.[5] Salamey v. Am. Airlines, Inc., No. 8:11-cv-2354-T-23MAP, 2011 WL 5445129, at *1 (M.D. Fla. Nov. 9, 2011) (citing In re Nigeria Charter Flights Contract Litig., 520 F. Supp. 2d 447, 455 (E.D.N.Y. 2007)); Vumbaca, 859 F. Supp. 2d at 366; Oparaji, 2006 WL 2708034, at *4 (citing Wolgel v. Mexicana Airlines, 821 F.2d 442, 445 (7th Cir. 1987)); Seagate Logistics, Inc. v. Angel Kiss, Inc., 699 F. Supp. 2d 499, 506 (E.D.N.Y. 2010). Thus, the Court conducts the

---

[4] For this case's purposes, the substance of Article 19 under the Warsaw and Montreal Conventions are substantially the same. See Jae Woon Lee & Joseph Charles Wheeler, Air Carrier Liability for Delay: A Plea to Return to International Uniformity, 77 J. Air L. & Com. 43, 50 (2012) (stating that the Montreal Convention changed the words "luggage or goods" to "baggage or cargo," but that the more substantial change, not relevant to disposing of Defendant's motion, is that Article 19 lowers the required diligence for airlines to be entitled to a defense).

[5] Similarly, routine claims for breach of contract involving self-imposed obligations are not preempted by the Airline Deregulation Act. Koutsouradis v. Delta Air Lines, Inc., 427 F.3d 1339, 1343-44 (11th Cir. 2005) (per curiam); Seagate Logistics, Inc. v. Angel Kiss, Inc., 699 F. Supp. 2d 499, 503-04 (E.D.N.Y. 2010) (citing Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 228 (1995)).

AO 72A
(Rev. 8/82)

following analysis to assess whether a party's claim for breach of contract is preempted:

> [I]f the airline ultimately transports the passenger or the passenger refuses the airline's offer of a later flight, the claim will be for delay, governed by [the] Montreal [Convention]. Where the airline simply refuses to fly passengers, without offering alternate transportation, then the claim will likely be for nonperformance.

Cotter, supra, at 12; see also Atia v. Delta Airlines, Inc., 692 F. Supp. 2d 693, 699-701 (E.D. Ky. 2010) (citing numerous cases adopting such an approach to deny summary judgment on a claim for breach of contract arising from the airline's refusal to transport the plaintiff to her destination); Fangbeng Fuondjing v. Am. Airlines, Inc., No. DKC 10-1169, 2011 WL 1375606, at *4 (D. Md. Apr. 12, 2011) ("[I]t is the failure to provide alternative transportation that gives rise to nonperformance of the contract such that the exclusivity clause of the Convention is not triggered."); Weigand, supra, at 452 ("Recent cases continue to generally affirm that claims based on an airline's refusal to fly passengers is not 'delay' under the Convention.").

### 3. Application of Preemption Analysis

Plaintiffs assert a claim for breach of contract, which is purportedly brought under Georgia law and 42 U.S.C. § 1981. Dkt. No. 1 ¶¶ 59-68. However, Plaintiffs have separately listed

a claim under 42 U.S.C. § 1981 in Count 3, and any analysis of a breach-of-contract claim under that statute would be redundant of the Court's analysis of the civil rights claims, _infra_ Part IV.B. Therefore, the Court interprets Count 1 as brought solely under state law.

Plaintiffs' claim for breach of contract is premised upon the airline "refusing to honor" the contract for passage from Jacksonville to Miami to Port-au-Prince.[6] Dkt. No. 1 ¶ 62. This occurred when the family arrived at the Miami airport and the airline's employees "refused to honor" the daughter's ticket and said that it had sold the seat to another person. Id. ¶ 30. Defendant contends that because she eventually arrived at her destination, the claim is one for delay and falls under Article 19's umbrella. Dkt. No. 6, at 9.

As Defendant admits, however, the daughter had to purchase a new ticket to depart to Haiti. Id. Rather than provide alternative transportation as part of the same contract, Defendant forced the daughter to enter into an entirely new contract for carriage. Therefore, taking the Complaint's

---

[6] The Complaint alleges that each plaintiff contracted with Defendant. Yet, it is clear that not all of the plaintiffs can maintain this cause of action. At this point, the Court cannot determine who can. For example, although the daughter seems to be the proper party to bring the action, the allegations are unclear about whether she was a minor and one of the parents or the company contracted on her behalf. Because the Complaint does not delineate among the plaintiffs and identify precisely who was party to the breached contract, the Court will not dismiss this claim for any plaintiff at this stage and instead will allow for greater factual development. For the purpose of this analysis, however, the Court assumes that the daughter entered into the agreement underlying this claim.

allegations as true, Defendant failed to fulfil its obligation to transport the daughter to Haiti under the first contract for carriage. This situation does not fall under Article 19's provision for delay because the airline did not offer an alternative means to travel without additional consideration. As a result, Article 19 does not preempt Plaintiffs' claim for breach of contract.

### 4. Sufficiency of the Complaint's Allegations

Having determined that Count 1 is not preempted, the Court assesses the sufficiency of the Complaint's allegations. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."[7] Uhlig v. Drayprop, LLC, No. 4:11-cv-145, 2013 WL 5532883, at *4 (S.D. Ga. Oct. 4, 2013) (quoting Norton v. Budget Rent A Car Sys. Inc., 307 Ga. App. 501, 502 (2010)). "A breach occurs if a contracting party fails to perform the engagement as specified in the contract." Id. (ellipses omitted) (quoting UWork.com, Inc. v. Paragon Techs., Inc., 321 Ga. App. 584, 590(1) (2013)). Thus, "to assert a claim for breach of contract, the party

---

[7] Of course, a prerequisite to a breach of contract is the contract's existence. At a minimum, there are four essential elements to a valid contract: "(1) parties able to contract; (2) consideration; (3) agreement by the parties to the terms of the contract, the essence of which is a meeting of the minds; and (4) a subject matter on which the contract can operate." Uhlig, 2013 WL 5532883, at *4 (citing O.C.G.A. § 13-3-1).

against whom the claim is brought must have been a party to the contract." Id.

The Complaint makes out a claim for breach of contract.[8] Taking its allegations as true, the daughter contracted for transportation to Haiti and apparently had the power to skip the first leg of the trip from Jacksonville to Miami. Despite this purported power, Defendant denied the daughter the right under the contract to board the plane to Haiti and forced her to enter into a new agreement for carriage. Damages exist in the form of the additional cost for the new ticket. All required elements are satisfied. Therefore, as to the portion of Defendant's motion pertaining to breach of contract, Defendant's motion is **DENIED**.

B. Preemption of Civil Rights Claims (Counts 2 through 4)

In Counts 2 through 4, Plaintiffs allege various species of violations of their civil rights. Dkt. No. 1 ¶¶ 69-114. In their response, they apparently admit that there is no authority allowing recovery for any of these civil rights claims under the Montreal Convention. See Dkt. No. 15, at 6 (stating that counsel "has not found any authority that allows recovery of the various civil rights claims in the instant case under the

---

[8] In a reply brief in support of its motion to dismiss, Defendant attached a copy of the airline's "Conditions of Carriage" and an affidavit from a "Team Leader and Senior Claims Analyst" for the airline. Dkt. Nos. 17-1 to -2. These attachments purportedly show that Plaintiffs cannot maintain a claim for breach of contract. However, the Court declines to consider these in ruling on Defendant's motion. Fed. R. Civ. Proc. 12(d)

AO 72A
(Rev. 8/82)

Montreal Convention" and admitting that "some of the plaintiffs' claims may be preempted by the Montreal Convention"). Moreover, they have not briefed whether these counts lie outside the Convention's scope. Despite Plaintiffs' failure to defend their claims,[9] the Court will assess the claims on the merits.

For the same reason that Plaintiffs' contract claim is not preempted, their civil rights claims weather Defendant's motion to dismiss.[10] These claims are largely based on the same facts underlying the breach-of-contract claim, albeit supplemented by allegations of discrimination based on race and nationality. See Dkt. No. 1 ¶¶ 71-76 (stating in Count 2, for "public accommodation discrimination" under "Title II of the Civil Rights Act of 1964," that Plaintiffs were denied "equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public

---

[9] As this Court's Local Rules state, "[f]ailure to respond . . . shall indicate that there is no opposition to a motion." Local R. 7.5. When a party fails to respond to a motion to dismiss pursuant to Rule 12(b)(6), "it is within the Court's discretion to grant the motion solely on the basis that it is unopposed." Nye v. HSBC Bank USA, N.A., No. 1:12-CV-00770-RWS, 2012 WL 5613448, at *1 n.2 (N.D. Ga. Nov. 14, 2012) (citing Magluta v. Samples, 162 F.3d 662, 664-65 (11th Cir. 1998) (per curiam)).

[10] As to these counts, Defendant briefed its motion solely on the basis that the civil rights claims are preempted. Defendant did not argue—as it did with the claim for intentional infliction of emotional distress—that the allegations in the Complaint are generally deficient and fail to state a claim upon which relief can be granted. Therefore, the Court will not sua sponte consider such a basis for dismissal. See Fed. R. Civ. Proc. 7(b)(1)(B) (stating that a motion must "state with particularity the grounds for seeking the order"). This decision does not decide that issue, and the Court invites argument on it in any future motions. See, e.g., Kalantar v. Lufthansa German Airlines, 402 F. Supp. 2d 130, 137-39 (D.D.C. 2005) (dismissing claims under 42 U.S.C. § 1981 and Title II of the Civil Rights Act of 1964 because the plaintiff failed to set forth sufficient evidence in support).

AO 72A
(Rev. 8/82)

accommodation . . . without discrimination or segregation"
(citing 42 U.S.C. § 2000a)); id. ¶¶ 85-90 (stating in Count 3,
for violation of 42 U.S.C. § 1981 under the Civil Rights Act of
1866, that Plaintiffs were discriminated against based on their
race as they attempted to enforce a contract); id. ¶¶ 99-105
(asserting a conspiracy as underlying Count 4, for violation of
42 U.S.C. § 1985 under the Civil Rights Act of 1871, and as
facilitating the alleged claims for discrimination in Counts 2
and 3).  Although the Court recognizes authority finding similar
civil rights claims preempted by the Montreal Convention, those
cases involve allegations falling squarely within the
Convention's scope.  Compare Dosso v. British Airways, PLC, No.
AW-07-2710, 2010 WL 64922, at *6-7 (D. Md. Jan. 5, 2010)
(finding that a § 1981 claim was not preempted by the Warsaw
Convention because the plaintiff was not embarking or
disembarking at the time of the injury) with King, 284 F.3d at
361-62 (finding a discrimination claim preempted because it
occurred during the course of embarking); Kripalani v. AMR
Corp., No. 12 Civ. 5609(KBF), 2013 WL 1822777, at *3 (S.D.N.Y.
Apr. 30, 2013) (dismissing a discrimination claim arising from
events on an international flight); Mizyed v. Delta Airlines,
Inc., No. 12-382, 2012 WL 1672810, at *3 (E.D. La. May 14, 2012)
(dismissing a claim where damage occurred during
"embarking/disembarking"); Atia, 692 F. Supp. 2d at 697, 703

(dismissing a discrimination claim falling within the scope of Article 17 because the events occurred while the plaintiff was boarding a plane); Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 494-95 (S.D.N.Y. 2009) (dismissing discrimination claims because the alleged wrongful actions occurred during the course of international carriage when checked baggage was in the charge of the carrier); Gibbs v. Am. Airlines, Inc., 191 F. Supp. 2d 144, 145-49 (D.D.C. 2002) (holding that a discrimination claim arising from treatment of an unruly passenger was preempted); Fangbeng Fuondjing, 2011 WL 1375606, at *4 (dismissing a discrimination claim as falling under Article 19 because it dealt with delay rather than non-performance). Here, as with the contract claim, the allegations do not fall within the scope of the Montreal Convention. Therefore, as to Counts 2 through 4, the claims are not preempted,[11] and Defendant's motion is **DENIED**.

---

[11] Likewise, the Airline Deregulation Act does not preempt these claims because they are wrought from federal law, not state law. See 49 U.S.C. § 41713(a) (defining a "State," to which the act is applicable, as "a State, the District of Columbia, and a territory or possession of the United States"); Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378-80 (1992) (describing the act's history and purpose "[t]o ensure that the States would not undo federal deregulation with regulation of their own"); Malik v. Continental Airlines Inc., 305 F. App'x 165, 167-170 (5th Cir. 2008) (per curiam) (analyzing separately claims pleaded under state and federal discrimination laws).

AO 72A
(Rev. 8/82)

C. <u>Intentional Infliction of Emotional Distress (Count 5)</u>

Plaintiffs assert a state-law claim for intentional infliction of emotional distress.[12] Dkt. No. 1 ¶¶ 115-33. As discussed below, the Complaint fails to sufficiently plead such a claim.

1. The Alleged Events and Possible Preemption

Two actions are explicitly identified as constituting extreme and outrageous conduct. First is Defendant's "publicly attacking [the family] in the airport in front of the [family's] travel companions and the general public in the airport for not knowing English and needing an interpreter while Defendant's employee had a heavy accent." Id. ¶ 119. Second is Defendant's intentional or reckless failure "to do anything to communicate to [the parents] the predicament of [the daughter] or provide any assistance to [the daughter] in her time of need during her stranding in the airport." Id. ¶ 121. In addition, drawing all reasonable inferences in Plaintiffs' favor, the undisclosed delay in travelling to Haiti and having to purchase a new ticket might also be considered in assessing the egregiousness of

---

[12] Defendant briefed extensively about whether Plaintiffs can maintain a claim for negligent infliction of emotional distress. Dkt. No. 6, at 12-15. However, because Plaintiffs did not bring such a claim, the Court need not address these arguments. See Dkt. No. 1 ¶¶ 115-133 (asserting a claim for only "intentional" infliction of emotional distress). Even if such a claim was asserted, it would be dismissed for the same reasons as the claim for intentional infliction of emotional distress.

AO 72A
(Rev. 8/82)

Defendant's actions.  Thus, Plaintiffs' claim encompasses Defendant's actions or omissions at different points in time.

As with the other counts, part of the claim escapes the purview of the Montreal Convention.  The allegations involving Louis's rude comments and the forced purchase of a new ticket are related to the nonperformance of the original contract rather than the delay in transporting the daughter under the second contract.  In contrast, the other allegations have an intimate connection with the delayed transportation of the daughter and therefore fall under Article 19's purview. Therefore, to the extent the claim is based on those acts or omissions, it is preempted.

As just stated, however, part of the claim is based upon actions falling outside of the Convention's scope.  As a secondary source of preemption, Defendant cites the Airline Deregulation Act ("ADA"):

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1253 (11th Cir. 2003) (emphasis in original) (quoting 49 U.S.C. § 41713(b)(1)). To determine whether the ADA's preemptive force applies, the key question is whether a state cause of action is "related to" the

AO 72A
(Rev. 8/82)

"price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). In short, there must be "a connection with or reference to the elements of air travel that are bargained for by passengers with air carriers." Branche, 342 F.3d at 1258. Indeed, this phrase can contemplate various characteristics and activities of airlines:

> This includes not only the physical transportation of passengers, but also the incidents of that transportation over which air carriers compete. This connection can be established by showing that the state law in question either directly regulates such services or . . . has a significant economic impact on them.

Id. at 1258-59. However, "state law personal injury actions generally have been held not to be pre-empted under the ADA." Id. at 1259; see also Koutsouradis v. Delta Air Lines, Inc., 427 F.3d 1339, 1343-45 (11th Cir. 2005) (per curiam) (analyzing a claim for intentional infliction of emotional distress apart from claims found to be preempted by the ADA). Such a determination depends on the facts of the specific claim. Smith v. Comair, Inc., 134 F.3d 254, 259 (4th Cir. 1998). "Suits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the ADA if the conduct too tenuously relates or is unnecessary to an airline's services." Id.

AO 72A
(Rev. 8/82)

Taking all reasonable inferences in Plaintiffs' favor, it is possible that Louis's rude behavior was maliciously motivated and unnecessary to the airline's services. Greater factual development would be necessary on this point and to determine whether the ADA's preemptive force properly applies here. Likewise, although the repurchase of a ticket appears to be closely related to the price, route, or service of an air carrier, the Court would allow further factual development. Nevertheless, taking the allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs cannot state a claim for relief.

2. Claim on the Merits

To succeed on this claim, Plaintiffs must establish four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." Hendrix v. Phillips, 207 Ga. App. 394, 395(1) (1993) (quoting Bridges v. Winn-Dixie Atlanta, Inc., 176 Ga. App. 227, 230(1) (1985)).

Plaintiffs' primary deficiency is their failure to show the second element. In response to Defendant's motion, Plaintiffs cite no legal authority to explain how the Complaint's allegations constitute extreme and outrageous conduct. Dkt. No.

AO 72A
(Rev. 8/82)

15, at 7.  Instead, Plaintiffs apparently rely on the Court to

find that the actions leading to their "abject humiliation and

degradation" are patently extreme and outrageous.  Id.  The

second element, however, requires a showing that Defendant's

conduct was "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to

be regarded as atrocious, and utterly intolerable in a civilized

community."  Phinazee v. Interstate Nationalease, Inc., 237 Ga.

App. 39, 40 (1999) (quoting Bowers v. Estep, 204 Ga. App. 615,

618(2) (1992)); see also Restatement (Third) of Torts: Physical

& Emotional Harm § 46 cmt. d (2012) (noting that the "extreme

and outrageous" element "requires both that the character of the

conduct be outrageous and that the conduct be sufficiently

unusual to be extreme").  Indeed, in Georgia:

> [It is] held that outrageous conduct sufficient
> to justify a claim of intentional infliction of
> emotional distress "does not include mere
> insults, indignities, threats, annoyances, petty
> oppressions, or other vicissitudes of daily
> living.  Plaintiffs are expected to be hardened
> to a certain amount of rough language and to
> occasional acts that are definitely inconsiderate
> and unkind."

Ghodrati v. Stearnes, 314 Ga. App. 321, 323 (2012) (quoting

Wilcher v. Confederate Packaging, Inc., 287 Ga. App. 451, 454(2)

(2007)); see also Northside Hosp., Inc. v. Ruotanen, 246 Ga.

App. 433, 434-35 (2000) (stating that rude behavior to the

family of a deceased person was not sufficiently egregious).  A

AO 72A
(Rev. 8/82)

determination on this element is a question of law.  Hill v.
City of Fort Valley, 251 Ga. App. 615, 616(1a) (2001).

The Complaint alleges, at best, mere insults and
indignities.  Criticism of another's proficiency in speaking
English does not constitute extreme and outrageous conduct.[13]
See Rose v. Panolam Indus. Int'l Inc., 301 F. Supp. 2d 239, 248
(D. Conn. 2004) (finding that criticism of a worker for not
speaking proper English, along with greater instances of
harassment, was not sufficiently extreme and outrageous);
Ananeh-Firempong v. British Caledonian Airways, 932 F.2d 972,
972 (9th Cir. 1991) (affirming dismissal of such a claim where
an airline worker asked a passenger whether he spoke English
when he did not comply with a request to move).  Likewise,
having to buy a new ticket because of another party's failure to
perform under an existing contract falls far below anything that
can be labeled as "extreme and outrageous."[14]  See Kin Chun Chung
v. JPMorgan Chase Bank, N.A., 975 F. Supp. 2d 1333, 1350 (N.D.
Ga. 2013) (dismissing such a claim based on mishandled servicing
of a loan allegedly leading to foreclosure of the plaintiff's

---

[13] Assuming that the Montreal Convention did not preempt Plaintiffs' claim to
the degree it arises from the daughter's delayed transportation, the Court is
unaware of any authority imposing a duty to communicate with the parents
about the daughter's whereabouts and would decline to find that such a
failure rises to the level of extreme and outrageous conduct.

[14] Moreover, this basis for the claim is largely subsumed by Plaintiffs' other
counts.  Cf. Peterson v. Merscorp Holdings, Inc., No. 1:12-cv-00014-JEC, 2012
WL 3961211, at *6 (N.D. Ga. Sept. 10, 2012) ("[P]laintiffs' claim for
intentional infliction of emotional distress seems largely subsumed by their
claim for wrongful foreclosure.  Plaintiffs' claim for intentional infliction
of emotional distress is therefore DISMISSED.").

AO 72A
(Rev. 8/82)

home); <u>Frank v. Fleet Fin., Inc. of Ga.</u>, 238 Ga. App. 316, 318 (1999) (rejecting such a claim based on a breach of contract constituting extreme and outrageous conduct). Therefore, Plaintiffs fail to plead a plausible claim for intentional infliction of emotional distress, and Count 5 is **DISMISSED**.

D. <u>Attorney's Fees (Count 6)</u>

Plaintiffs' claim for attorney's fees is made under 42 U.S.C. § 1988(b) and premised upon the alleged violations of Plaintiffs' civil rights. Dkt. No. 1 ¶¶ 134-36. The availability of attorney's fees is contingent upon a plaintiff being a "prevailing party," 42 U.S.C. § 1988(b), who has not yet been determined in this action. In light of the Court not dismissing the claims upon which attorney's fees would be based, Defendant's motion to dismiss Count 6 is **DENIED**.

E. <u>Punitive Damages</u>

The Complaint states a claim for punitive damages, which Defendant seeks to dismiss. Dkt. No. 1, at 32-33. Punitive damages may be awarded as a matter of federal law under 42 U.S.C. § 1983 or Georgia law under O.C.G.A. § 51-12-5.1. As to recovery under federal law, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S.

AO 72A
(Rev. 8/82)

30, 56 (1983). Similarly, under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

Plaintiffs apparently admit that they cannot "seek punitive damages under the Montreal Convention." Dkt. No. 15, at 7. However, because the Montreal Convention does not apply to the remaining claims, as pleaded in the Complaint and left after this Order, this concession is unwarranted. Greater factual development is necessary to determine whether Plaintiffs can make a claim for punitive damages. Therefore, Defendant's motion to dismiss this claim is **DENIED**.

F. Dismissal of Plaintiff Jerich07

Defendant seeks to dismiss Jerich07 from the case based on (A) it not having standing to recover under the Montreal Convention, (B) it not contracting with Defendant, or (C) it not being capable of having its civil rights violated. Dkt. No. 6, at 22-24. The first argument is moot because, as already discussed, the Montreal Convention is inapplicable to the remaining claims. The second argument fails because, taking the

AO 72A
(Rev. 8/82)

facts alleged in the Complaint as true, the company might have contracted with Defendant. See supra Part IV.A.3.

As to the third argument, there is authority for the proposition that, in certain circumstances, a racially neutral corporation or organization may assert a claim under § 1981. E.g., Ultimax Transp., Inc. v. British Airways, Inc., 231 F. Supp. 2d 1329, 1338 (N.D. Ga. 2002); Inash Corp. v. Am. Dairy Queen Corp., Civ. A. No. CV688-103, 1990 WL 622095, at *3 n.1 (S.D. Ga. Aug. 28, 1990); Rosales v. AT&T Info. Sys., Inc., 702 F. Supp. 1489, 1496-97 (D. Colo. 1988). The company's ability to bring a Title II claim is less clear. The Court is unaware of any authority either countenancing or wholly rejecting an organization's ability to have standing to make a claim under Title II. But see Maced. Church v. Lancaster Hotel Ltd. P'ship, 498 F. Supp. 2d 494, 499-501 (D. Conn. 2007) (dismissing a Title II claim brought by a church because the complaint did not allege how the individuals' and the organization's rights were violated). The relevant statute, however, explicitly protects the rights of "[a]ll persons." 42 U.S.C. § 2000a(a). This language may contemplate protection for not just individuals. Cf. 42 U.S.C. § 1997(3) (defining "person," for the purposes of a separate title, as "an individual, a trust or estate, a partnership, an association, or a corporation"). Therefore, dismissal of any of the company's claims—at this juncture—is

AO 72A
(Rev. 8/82)

without merit, and Defendant's motion to dismiss the company's claims is **DENIED**.

## V. Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Dkt. No. 6. Count 5 is **DISMISSED**. Defendant may be able to prevail on some or all of the remaining claims on a motion for summary judgment once discovery is completed.

**SO ORDERED**, this 9TH day of July, 2014.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)