IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| JOSEPH BENJAMIN, EUNIDE BENJAMIN, BERNEIDE J. BENJAMIN, and JERICH07 ARNAUD PROJECTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES, INC. <br><br> Defendant. | CIVIL ACTION NO. 2:13-cv-00150-LGW-JEG |

### AMERICAN AIRLINES, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendant, American Airlines, Inc. ("American Airlines"), respectfully submits this Reply Brief in Support of its Motion for Summary Judgment.

The crux of the plaintiffs' breach of contract claim is that Joseph Benjamin "justifiably relied upon the apparent authority" of an unidentified customer service employee when he allegedly "informed" this employee that Berneide Benjamin would disregard her flight itinerary. (Plaintiffs' opposition brief at 6). For several reasons, the doctrine of apparent agency does not save the Benjamins' breach of contract claim. First, justifiable reliance did not arise when Mr. Benjamin "informed" an unidentified employee that Berneide Benjamin would disregard her itinerary. A unilateral statement such as this does not equate to justifiable reliance. Second, apparent authority "is not predicated on whatever a third party chooses to think an agent has the right to do, or even upon what the agent says he can do, but must be based on acts of the *principal* which led the third party to believe reasonably that the agent had such authority,"[1] and

---

1 *Rutland v. State Farm Mut. Auto Ins. Co*., 392 Fed. Appx. 721; 2010 U.S. App. LEXIS 16744 (11th Cir. 2010).

1

in this case, the plaintiffs allege no act by American Airlines that yielded ostensible/apparent authority; to the contrary, all documentary evidence confirms no modification to Berneide Benjamin's itinerary. Third, courts analyzing the doctrine of apparent authority in aviation cases hold that the terms of the Conditions of Carriage obviate a plaintiff's claim of reasonable reliance upon an agent's representations. And here, the Conditions of Carriage and International General Rules Tariff state that a ticket becomes invalid when not used in accordance with the passenger's itinerary. The Conditions of Carriage and International General Rules Tariff expressly prohibit modification unless authorized in writing by a corporate officer, factors that undisputedly never occurred here.

In support of their claims of civil rights violations, the Benjamins allege, cursorily, that "everything that happened beginning with [Berneide's] ticket cancellation to her arrival in Haiti had to do with her race and national origin." (Plaintiff's brief at 7-8). This is precisely the kind of "naked allegation of discrimination" that fails to overcome summary judgment.

As the plaintiffs have failed to state a legally cognizable claim for breach of contract or discrimination, these claims, as well as the attendant claims for punitive damages and attorneys' fees, are subject to summary adjudication and dismissal.

**I.  ARGUMENT**

   **a. Breach of Contract**

The cases that the plaintiffs cite in support of their breach of contract claim all limit recovery to the party "who has the *right to complain* about the contract being broken." *Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278; 469 S.E.2d 712 (1996) (reversible error to deny Company's motion for judgment n.o.v. where customer failed to abide by the terms of the parties' agreement); *Norton v. Budget Rent a Car System, Inc.*, 307 Ga. App. 501; 705 S.E.2d

305 (2010) (no breach of contract claim where the plaintiff failed to adduce any evidence that the damages resulted from the alleged breach.) The critical element here—the Benjamins' _right to complain_ about the cancellation of Berneide's ticket—is fatally lacking.

The plaintiffs claim that they "informed Defendant prior to the date of the flights that Ms. Benjamin would not fly the Jacksonville portion of the trip, but would use the Miami to Port au Prince and Port au Prince to Jacksonville return flight," and "[n]o one with Defendant objected to this or in any other way suggested anything improper about this." (Plaintiffs' opposition brief at 3). However, Mr. Benjamin admits that when he attempted to book this kind of itinerary online, the online reservation system would not let him do so. (Joseph Benjamin dep. 107-107). He admits that he therefore called an American Airlines customer service representative who said "the only way for the round-trip tickets to work is I would have to purchase both round-trip from Jacksonville to Haiti and from Haiti to Jacksonville." (_Id_.) Eunide Benjamin likewise admits that the customer service person said: "well, we cannot make the ticket like that. You have to buy a round-trip from Jacksonville to Haiti and from Haiti to Jacksonville." (Deposition of Eunide Benjamin, Exhibit 4, at 39). The Benjamins admit that the customer service employee said that he would not—and indeed, _could not_—alter the roundtrip flight schedules to create a custom-itinerary for Berneide Benjamin. (Joseph Benjamin 107-107). In response, Mr. Benjamin allegedly said he and his family were going to proceed with their plans regardless of the itinerary on their ticket, telling the representative, "well even if I make the ticket like that, our daughter is going to travel with us from Brunswick to Miami." (Eunide Benjamin at 39).

The plaintiffs do not dispute that, by booking their flight online, they needed to acknowledge the Payment Terms and Conditions. It is undisputed that Joseph Benjamin affirmed that he read, understood and agreed to the Conditions of Carriage and International General

Rules Tariff that applied to the roundtrip ticket he purchased through American Airlines' website. It is undisputed that on July 14, 2012, Joseph Benjamin received an electronic notification that Berneide Benjamin was eligible for check-in aboard Flight 309 and he forwarded this to Berneide; again, the flight itinerary makes clear that it departs from Jacksonville. (See, Exhibit 6 attached as part of American's original summary judgment motion, Electronic Correspondence to Joseph Benjamin dated July 14, 2012). It is undisputed that Berneide Benjamin did not check in for Flight 309 out of Jacksonville and did not board this flight—it departed in accordance with the itinerary on her ticket and she admits she was a no-show. (Berneide Benjamin at 72). It is undisputed that nothing prevented Berneide from boarding the Jacksonville leg of her trip; in other words, no medical condition, catastrophe, injury, or act by any employee of American Airlines barred her from boarding in Jacksonville. (Eunide Benjamin at 51-52). Berneide Benjamin did not comply with her itinerary, thus none of the plaintiffs qualify as a party "who has the *right to complain* about the contract being broken." *Webb*, supra; *Norton*, supra.

As to the ticket that Mr. Benjamin purchased, the Conditions of Carriage and International General Rules Tariff plainly define an invalid ticket as one where the passenger <u>does not comply with her itinerary</u>. (*See*, Exhibit 7) The Conditions of Carriage and International General Rules Tariff also provide that an invalid ticket "remains invalid unless it is reissued by American or its authorized agent *upon payment of applicable charges*." (*Id*.) Although the plaintiffs claim that "Defendant required the Benjamins to purchase another ticket for Ms. Benjamin for over $1,000.00, more than double the original price," the Passenger Name Records (PNRs) show that the Benjamins were <u>not</u> charged for the purchase of a *second ticket*. (See Affidavit of Patricia Barnhold of American Airlines, Exhibit 8). Rather, Berneide Benjamin's

4

original ticket, which was cancelled when she was a no-show, was re-issued to her and American charged a "fare difference" associated with the re-issuing of the ticket. (*Id*.) Thus, by invalidating Ms. Benjamin's ticket and charging a fare difference when the ticket was later reissued, American was following the precise protocol laid out in the Conditions of Carriage and International General Rules Tariff.

The plaintiffs' only remaining argument is that they had "dealt with Defendant for years" and so they "justifiably relied upon the apparent authority" of the unnamed customer service representative who Mr. Benjamin "informed" of their plans to proceed regardless of the itinerary.

The doctrine of apparent/ostensible agency does not save their claim. First, the Conditions of Carriage expressly state that "no agent, employee or representative of American has authority to alter, modify or waive any provision of the Conditions of Carriage unless authorized in writing by a corporate officer of American." (Conditions of Carriage, Exhibit 7, at p. 13). Likewise, the International General Rules Tariff 74, under the heading Percentage of Fares provides that:

> No Employee of the carrier has the authority to alter, modify or waive any provision of this Tariff unless authorized by a corporate officer of carrier. AA appointed agents and representatives are only authorized to sell tickets for air transportation pursuant to the approved fares, rules and regulations of AA, (applicable for transportation to/from points outside the U.S.A. and on file with the D.O.T.)

(*See*, International General Rules Tariff, Rule 0005 "Percentage of Fares -74," exhibit G to defendant's original summary judgment brief).

The International General Rules Tariffs further provide that "[n]o agent, servant, or representative of carrier has authority to alter, modify, or waive any provisions of the contract of

5

carriage of this tariff." (*Id.*, Rule 0055, "Modification and Waiver – 75).

The clear terms of these clauses obviate any assertion of justifiable reliance or apparent agency. *Wittenberg v. Eastern Air Lines*, 126 F. Supp. 459 (E.D.S.C. 1954) (plaintiff did not make his connecting flight after an agent of the airline promised he would; airline moved for summary judgment and the court found that the <u>contract between the passenger and the airline completely barred his action because they prevented him from relying on statements from the airline's agent</u>); *Levy v. Delta Airlines*, 2002 U.S. Dist. LEXIS 7759 (S.D.N.Y. 2004) (affirming summary judgment of breach of contract claim arising after an airline agent told plaintiffs that they only needed a birth certificate for their infant son to fly to France; when they arrived for the flight, Delta refused to board the child; because <u>the Contract of Carriage placed on plaintiffs the responsibility for obtaining necessary travel documents, they had no right to rely on alleged statements by airline's agents</u>). Undisputedly, no "authorized writing" by a "corporate officer" modified Berneide Benjamin's travel itinerary. Her ticket itinerary, reflected in Exhibit B to American's original motion for summary judgment, shows that it is a roundtrip flight departing from Jacksonville. Under the Conditions of Carriage and International General Rules Tariff, the conversation that Mr. Benjamin claims he had with an unidentified customer service individual did not did not alter the contract.

Second, the plaintiffs' unsupported reference to "frank discussions" on past occasions with unidentified "agents" of American Airlines does not yield the requisite apparent authority in this case. Mr. Benjamin himself admits that the unidentified customer service representative told Mr. Benjamin that he *could not* and *would not* make the custom-tailored itinerary that the Benjamins desired. That Mr. Benjamin chose to disregard the customer service representative's statement does not create apparent authority. Justifiable reliance requires more than the one-

6

sided act of "informing" an unnamed party of an intended action. *Hanson v. Am. W. Airlines, Inc.*, 544 F. Supp. 2d 1038, 1043 (C.D. Ca. 2008) (rejecting the plaintiff's argument that airline employee's "station behind a desk near the baggage claim area led Plaintiff to reasonably believe that [the employee] had the authority to make contracts for the delivery of lost baggage;" the plaintiff could not reasonably conclude that this employee "suddenly had authority to contract with him" particularly in light of the language in the Contract of Carriage.)

Last, the plaintiffs allege no act by American (the alleged principal) that created apparent agency. The law within the Eleventh Circuit is that "apparent authority is not predicated on whatever a third party chooses to think an agent has the right to do, or even upon what the agent says he can do, but must be based on acts of the principal which led the third party to believe reasonably that the agent had such authority." *Rutland v. State Farm Mut. Auto Ins. Co.*, 392 Fed. Appx. 721; 2010 U.S. App. LEXIS 16744 (11th Cir. 2010) (affirming district court's rejection of the plaintiff's claim that she relied upon the apparent authority of a customer service agent who told her, over the phone, that her insurance policy would be reinstated and provide for retroactive coverage once she mailed in past-due payments; a letter from the company expressly informed plaintiff that her policy had been canceled and the policy itself forbade retroactive coverage, therefore even if the plaintiff believed that the telephone agent had the authority to provide retroactive coverage "it was not a reasonable belief"); *Holy Fellowship Church of God in Christ v. Brittain*, 240 Ga. App. 436; 523 S.E.2d 93 (1999) (affirming summary judgment despite plaintiff's claim that a securities broker had apparent authority to modify an agreement between the parties because the plaintiff "does not allege that [the defendant/principal] ever made any statements or did any act which would cause the [plaintiff] to believe they consented to have the securities broker act as their agent. Therefore the [plaintiff] has not raised an issue of fact as to

whether [the broker] had apparent authority to make the agreement.")

As in *Rutland*, there was no "reasonable belief" by the Benjamins that any kind of modification of their itinerary had occurred by their mere act of "informing" an unidentified employee that they planned to disregard it. As in *Brittain*, the plaintiffs do not allege any act by American that led them to believe that the unnamed person with whom Mr. Benjamin claims he spoke had any authority. Indeed, every act by American shows the precise opposite: the Conditions of Carriage and International General Rules Tariff prohibit modification of an itinerary. Berneide Benjamin's itinerary shows departure from Jacksonville. The telephone agent's undisputedly said he could *not* make a custom itinerary for Berneide. And the confirmation email on July 20 reiterated that Berneide was still scheduled to depart from Jacksonville. Having failed to comply with her itinerary, Berneide Benjamin's ticket became invalid as set forth in the Conditions of Carriage and International General Rules Tariff. The plaintiffs are not parties who have a right to complain of any breach, and no such breach occurred here. This claim fails as a matter of law.

    b. **Discrimination Claims**

        i. **Section 1981**

In support of their claim under the Civil Rights Act of 1866, 42 U.S.C. § 1981 the plaintiffs allege only that Luis Gallo "chided" them about their "race, accent and alleged inability to speak English" and that "everything that happened beginning with [Berneide's] ticket cancellation to her arrival in Haiti had to do with her race and national origin." (Plaintiff's brief at 7-8). The unsupported assertion that "everything" had to do with race and national origin is precisely the kind of "naked allegation of discrimination" that has been held insufficient to overcome summary judgment. *Tejwani v. United Airlines, Inc.*, 2009 U.S. Dist. LEXIS 27485

8

(S.D.N.Y. Mar. 30, 2009) (There was no showing that United "provided preferential or non-discriminatory treatment to any similarly-situated non-minority passengers" and "the lack of any specific factual support for his claim of racial motivation" defined the case as "simply a naked allegation of racial discrimination.")

The plaintiffs bore the burden of showing that they were treated differently from similarly situated passengers. It is undisputed that although all members of the Benjamin's party were African American, nobody else's ticket was cancelled except Berneide Benjamin. (Joseph Benjamin at 117). The flight histories for the next three flights departing from Miami to Port-au-Prince show that these flights were oversold. (See Exhibit 5 to defendant's original motion for summary judgment.) The flight history for Flight No. 803 shows that it departed Miami, Florida at 2:45 p.m. on July 16, 2012 and it was oversold. (*Id*.) The Standby Priority List for this flight shows that Berneide Benjamin was number 25 on the stand-by list, meaning that twenty-four other standby passengers had a higher priority code for any open seats on Flight No. 803. (*Id*.) Given her numerical status on the standby priority list, gate agents for Flight No. 803 would not have the discretion to place Berneide Benjamin ahead of the twenty-four other stand-by passengers with a higher priority code for Flight No. 803. (*Id*.) The flight history for Flight No. 377 shows that it departed Miami, Florida at 7:10 a.m. on July 17, 2012 and it was also oversold. (*Id*.) The Standby Priority List for this flight shows that Berneide Benjamin was number 30 on the list, meaning that twenty-nine other standby passengers had a higher priority for any open seats on Flight No. 377. (*Id*.) The priority codes for the preceding passengers indicate that they were passengers already aboard a flight that was connecting through Miami on the morning of July 17, or that they had an upgraded status. (*Id*.) Given her numerical status on the standby priority list, gate agents for flight No.

377 would not have the discretion to place Berneide Benjamin ahead of the twenty-nine other stand-by passengers with a higher priority code for Flight No. 803. (*Id.*) Berneide Benjamin was accommodated aboard the next flight, which was Flight No. 1291 which was scheduled to depart Miami, Florida at 12:05 p.m. (*Id.*) The plaintiffs have failed to show that they were treated differently from similarly situated employees.

Their only other claim is that Luis Gallo "chided" them when he allegedly asked if an interpreter should be involved after the parties cycled through the same conversation. This does not set forth a cognizable claim under 42 U.S.C. § 1981. In *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130 (D.C. 2005), the evidence showed that the defendant airline refused to board the plaintiff until he consented to a hand-search of his luggage, telling him that because "he had an Iranian passport, he might be a security threat to the flight and to German passengers" and told him, within earshot of other passengers that "he must know that the United States government is against all Iranians." *Id.* at 133. When the plaintiff protested this statement and asked to see the regulation requiring that all Iranians be hand-searched, he was told it was "top secret" and "confidential." The airline agent threatened to call police if he did not comply and the plaintiff was later arrested and an airline manager told him the airline "decided to deny you the flight because you refused [a] luggage search and you called us a racist." (*Id.*) Not only was he refused boarding and but he was held in detection at the airport jail. In granting summary judgment for the airline on the plaintiff's claim of discrimination, the court noted that the plaintiff "does not provide any evidence that shows, or even implies, that race was the reason he was subjected to a more extensive search." (*Id.*) This "essential defect," according to the court, "compels summary judgment for the defendants." (*Id.*)

The same "essential defect" exists in this case. Summary judgment in favor of American

Airlines is proper because there is no evidence of intentional discrimination and there is no evidence that plaintiffs were prevented, because of intentional discrimination, from making and enforcing contracts. *Sawyer v. Southwest Airlines, Co*., 243 F. Supp. 2d 1257 (D. Kan. 2003) (granting summary judgment when Southwest enforced a "ten minute rule" because the rule was facially neutral and although the employee spoke unkindly to plaintiff in applying it, this did not create a genuine issue of fact as to the discrimination claim); *Dennis v. Delta Air Lines*, 2011 U.S. Dist. LEXIS 115851 (E.D.N.Y. Aug. 18, 2011) (granting summary judgment because "even if plaintiff were able to establish a prima facie case of discrimination by showing that she was similarly situated to the white passengers ahead of her who were allowed to board the flight, plaintiff's section 1981 claim still would not withstand defendant's motion for summary judgment" because defendant "set forth a legitimate non-discriminatory reason for not allowing plaintiff to board the flight. . . the gate agent did not allow plaintiff to board the flight because plaintiff arrived late to the gate and the flight was full when plaintiff sought to board the flight."); *Dizon v. Trans World Airlines, Inc*., 1988 U.S. Dist. LEXIS 1619 (S.D.N.Y. Feb. 10, 1988) (granting airline's motion for summary judgment of passenger's race discrimination claim; airline showed that plaintiff's first class tickets were downgraded to economy tickets because she failed to arrive for her flight twenty minutes prior to departure). Summary judgment in American Airlines' favor is proper.

### ii. 42 U.S.C. § 1985(3)

In support of their claim of conspiracy under 42 § 1985(3), the plaintiffs allege only that "Mr. Barnett [sic] has demonstrated a conspiracy by the above acts." (Plaintiff's brief at 8). Not only is the argument devoid of any specific reference to the "above acts", but the essential elements of a § 1985(3) claim are nowhere mentioned. As set forth in American's original

11

motion for summary judgment, the plaintiffs were bound to show: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (9th Cir. 1993). A civil conspiracy is an agreement "of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose," or to accomplish a lawful purpose "by criminal or unlawful means." *Kalantar v. Lufthansa German Airlines*, 402 F.Supp.2d 130; 2005 U.S. Dist. LEXIS 35707 (D.C. 2005). The vague, unsupported reference to "the above acts" does not show a civil conspiracy and the defendant is entitled to summary judgment as to this claim**.**

### iii. Title II of the Civil Rights Act of 1964

The plaintiffs do not dispute that their claim under Title II of the Civil Rights Act of 1964 should be dismissed as a matter of law. *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 137-39 (D.D.C. 2005) (dismissing plaintiff's Title II claim because "among the four categories of public accommodation provided by Title II—places of lodging, places of eating, places of entertainment, and establishments located within or surrounding these other three types of premises—none even remotely resembles an airline, or indeed any other vehicle or mode of transportation."). Defendant is entitled to summary judgment on this claim.

### c. Attorney's fees and punitive damages

The plaintiffs' claim for punitive damages hinges entirely upon the assertion that they are entitled to such damages "[h]aving proved discrimination." (Plaintiff's brief at 9). First, as set forth above, dismissal of all of the plaintiffs' claims is warranted. The availability of attorney's fees is contingent upon the plaintiffs being a "prevailing party" as defined by 42 U.S.C. 1988 (b).

Summary judgment of plaintiffs' claims necessitates dismissal of their claims for attorney's fees and punitive damages. Second, plaintiffs have failed to carry their burden of showing entitlement to punitive damages as there is no showing of any wanton or malicious conduct. *Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 571-72 (8th Cir. 1989); *Shinault v. American Airlines, Inc.*, 936 F.2d 796, 805 (5th Cir. 1991).

## II. CONCLUSION

For the above reasons, as well as the reasons set forth in its original motion for summary judgment, defendant American Airlines respectfully asks that the Court summarily dismiss all Counts against it in the plaintiff's Complaint with prejudice.

This 27th day of April, 2015.

RUTHERFORD & CHRISTIE LLP
*/s/Carrie L. Christie*
CARRIE L. CHRISTIE
Georgia State Bar 125248
Admitted Pro Hac Vice
225 Peachtree Street
South Tower, Suite 1750
Atlanta, Georgia 30303
(404) 522-6888

DREW ECKL & FARNHAM, LLP
*/s/ Jeff Ward*
Jeff Ward
Georgia State Bar No. 737277
777 Gloucester Street, Suite 305
Brunswick, Georgia 31520
(912) 280-9662

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Georgia by using the CM/ECF system on this 27th day of April, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                                                RUTHERFORD & CHRISTIE LLP

                                                */s/Carrie L. Christie*
                                                CARRIE L. CHRISTIE
                                                Georgia State Bar 125248
                                                Admitted Pro Hac Vice