# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

JOSEPH BENJAMIN, EUNIDE
BENJAMIN, BERNEIDE J. BENJAMIN,
and JERICH07 ARNAUD PROJECTS,
INC.,

     Plaintiffs,

     v.

AMERICAN AIRLINES, INC.,

     Defendant.

CV 213-150

## ORDER

On October 10, 2013, plaintiffs Joseph Benjamin, Eunide Benjamin, Berneide Benjamin and Jerich07 Arnaud Projects, Inc. (collectively, "Plaintiffs") filed suit against Defendant American Airlines ("the airline"). Dkt. No. 1. The individual Plaintiffs, who are black Haitians, allege that the airline discriminated against them because of their race and national origin. Id. Plaintiffs seek attorney's fees and punitive damages for a Breach of Contract claim, in addition to claims for violations of 42 U.S.C. §§ 1981, 1985(3), and 2000a(a). See id. In response, the airline avers that Plaintiffs failed to abide by the terms of the Conditions of Carriage and that its

policies do not discriminate on account of race or national origin. See generally Dkt. No. 37. Presently before the Court is the airline's Motion for Summary Judgment. Id. Upon due consideration, the airline's Motion for Summary Judgment (Dkt. No. 37) is **GRANTED**.

### FACTUAL BACKGROUND

Plaintiff Joseph Benjamin ("Mr. Benjamin") and his wife, Eunide Benjamin ("Mrs. Benjamin") live in Brunswick, Georgia. Dkt. No. 37-3, 9:10-18. Mr. and Mrs. Benjamin (collectively, "the Benjamins") were born in Haiti, but they are naturalized citizens of the United States. Id. at 37:15-18; Dkt. No. 37-6, 10:11-15. The Benjamins have two children, a son and a daughter, Berneide Benjamin ("Miss Benjamin"), who is also a party to this litigation. Dkt. No. 37-3, 10:16-17. Both Benjamin children are United States citizens of Haitian descent. Dkt. No. 37-5, 32:15-23.

The Benjamins established Jerich07 Arnaud Projects, Inc. ("Jerich07"), a foreign, for-profit corporation which ministers to underserved populations in Haiti by delivering medicine, among other necessities. Dkt. No. 37-3, 48:22-51:14. In late May of 2013, Plaintiffs planned to visit Haiti for a mission trip that July. Id. at 83:10. Mr. Benjamin purchased roundtrip plane tickets for himself and his wife from Miami, Florida to Port-au-Prince, Haiti. Id. at 94:7-20. Mr. Benjamin then

purchased a separate ticket for Miss Benjamin.  Id. at 101:6-10.

The airline refused to allow Mr. Benjamin to purchase a "round

trip ticket from Miami to Haiti and Haiti to Jacksonville."  Id.

at 105:2-7.  Upon learning that the airline would not

accommodate the requested flight itinerary for Miss Benjamin,

Mr. Benjamin purchased a round trip fare from Jacksonville,

Florida to Port-au-Prince, Haiti, with a layover in Miami,

Florida for Miss Benjamin.  Id. at 105:18-21, 107:1-4.  Shortly

thereafter, Mr. Benjamin received an email confirmation of Miss

Benjamin's ticket.  Id. at 108:1-2.  Mr. Benjamin alleges that

he informed the airline, orally, prior to their departure that

Miss Benjamin would not fly the first leg of the trip from

Jacksonville, but would fly from Miami to Port-au-Prince and

return to Jacksonville from Port-au-Prince.  Id. at 107:11-21.

He alleges that an airline employee agreed, orally, that Miss

Benjamin could do so.  Id. at 107:1-16.

Upon the date of departure for Haiti, Miss Benjamin did not

board the Jacksonville leg of her flight.  Id. at 116:12-17.

When Plaintiffs arrived in Miami to board their flight to Haiti,

the airline refused to honor Miss Benjamin's ticket, explaining

that her seat had been sold when she failed to appear for her

flight from Jacksonville, Florida.  Id. at 116:12-117:1.  The

airline honored the airplane tickets of the remaining Plaintiffs

and the others traveling in the group.  Id. at 117:24.  When

AO 72A
(Rev. 8/82)

Plaintiffs complained about the airline's cancellation of Miss
Benjamin's ticket, the ticket agent asked the supervisor, Luis
Gallo ("Mr. Gallo"), who the Benjamins describe as Latino in
appearance, to speak to Plaintiffs.  Id. at 129:8; Dkt. No. 37-
5, 142:19-20.  As Plaintiffs talked amongst themselves, they
spoke in Creole, which Miss Benjamin believes that Mr. Gallo
overheard.  Dkt. No. 37-5, 85:17-22.

According to Plaintiffs, when Mr. Gallo tried to explain
the situation to Plaintiffs, he "insulted" them by stating, in
front of other people, that the Benjamins required the services
of an interpreter because they "don't speak English well."  Dkt.
No. 37-3, 118:5-18.  Mr. Benjamin "felt humiliated" by Mr.
Gallo.  Id. at 193:16.  Mr. Benjamin speculates that he received
different treatment from Mr. Gallo because he "had some bias
about the country [Haiti] . . . and he assumed that we are
Haitian."  Id. at 193:5-8.  Plaintiffs purchased a new ticket
for Miss Benjamin for a seat on the next flight to Port-au-
Prince.  Id. at 120:6-10.  Plaintiffs allege that Mr. Gallo
neither informed Plaintiffs that the new ticket they purchased
was a stand-by ticket, nor that all other flights to Port-au-
Prince on that date were sold out.  Id. at 132:16-20, 142:1-5;
Dkt. No. 37-5, 151:25.

Miss Benjamin did not arrive in Port-au-Prince until two
days later, when the airline was able to place her on the next

available flight, which "sabotaged" the trip as Miss Benjamin missed meaningful portions of the mission. Dkt. No. 37-3, 121:19-23. The airline never communicated with the Benjamins regarding Miss Benjamin's whereabouts or her standby status. Id. at 121:14-23. Mr. Benjamin alleges that he almost filed a missing person report for Miss Benjamin in both Haiti and the United States due to the airline's failure to communicate with him and his wife regarding the whereabouts of their twenty-one year old daughter. Id. at 139:9-16; Dkt. No. 37-5, 8:21. In addition to Miss Benjamin's late arrival, Plaintiffs allege that Miss Benjamin's luggage was destroyed, meaning that Jerich07 was unable to donate the "medical supplies, dry goods, toiletry stuff, care packages . . . toothbrushes . . . clothes, [and] some [deflated] soccer balls" that were in her two suitcases. Dkt. No. 37-5, 97:10-13, 98:5-7, 99:4-8.

When the group arrived in Port-au-Prince, none of their checked luggage, fourteen pieces in total, arrived with them. Dkt. No. 37-3, 121:11-14. When their luggage finally arrived, in groups of two and three over the course of the next twenty-four hours, at least four of the fourteen bags were damaged. Id. at 125:17-21, 127:8-9. The airline's conduct "weakened" Mrs. Benjamin, causing her to take nitroglycerin for a heart condition, dkt. no. 37-3, 121:5-6, 130:5, while Miss Benjamin

felt "mistreated and neglected" by the incident. Dkt. No. 37-5, 125:11-12.

## PROCEDURAL BACKGROUND

Following the initiation of the present suit on October 10, 2013, the airline filed a Motion to Dismiss on February 26, 2014. Dkt. No. 6. In an Order dated July 9, 2014, this Court granted in part the airline's Motion, dismissing Plaintiffs' claim for Intentional Infliction of Emotional Distress. Dkt. No. 22. The Court denied the remainder of the airline's Motion, allowing Plaintiffs to proceed to discovery of the claims for breach of contract, punitive damages, attorney's fees, and discrimination. Id.

After the parties completed discovery, the airline filed a Motion for Summary Judgment. Dkt. No. 37. The parties fully briefed the Motion in an Opposition and a Reply. Dkt. Nos. 44, 47. Following a Motions Hearing on July 30, 2015, the parties submitted supplemental briefing regarding whether Texas law controls Plaintiffs' Breach of Contract claim. Dkt. Nos. 52-54. The airline's Motion for Summary Judgment is now ripe for review. Upon careful consideration, the airline's Motion for Summary Judgment is **GRANTED** for the reasons set forth below.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).  A fact is "material" if it "might affect the outcome
of the suit under the governing law."  FindWhat Inv'r Grp. v.
FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A
dispute over such a fact is "genuine" if the "evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  Id.  In making this determination, the court is to view
all of the evidence in the light most favorable to the nonmoving
party and draw all reasonable inferences in that party's favor.
Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d
501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden
of demonstrating the absence of a genuine issue of material
fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To
satisfy this burden, the movant must show the court that there
is an absence of evidence to support the nonmoving party's case.
Id. at 325.  If the moving party discharges this burden, the
burden shifts to the nonmovant to go beyond the pleadings and
present affirmative evidence to show that a genuine issue of
fact does exist.  Anderson, 477 U.S. at 257.  The nonmovant may
satisfy this burden in two ways: First, the nonmovant "may show
that the record in fact contains supporting evidence, sufficient
to withstand a directed verdict motion, which was 'overlooked or

ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting <u>Celotex</u>, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

DISCUSSION

I.   **Breach of Contract Claim**

   A.   **Choice of Law Provision**

   Plaintiffs argue that the airline breached their contract by refusing to honor Miss Benjamin's ticket after she failed to appear in Jacksonville for the first leg of her ticket. Dkt. No. 44, pp. 5-7. As an initial matter, the airline included a choice of law provision in the Conditions of Carriage. Typically, pursuant to choice-of-law jurisprudence, "Georgia will honor choice of law provisions unless no reasonable basis exists for doing so or, application of the chosen state's law is contrary to a fundamental policy of Georgia which has a materially greater interest in the issue than the chosen state."

AO 72A
(Rev. 8/82)

Bryan v. Hall Chem. Co., 993 F.2d 831, 834 (11th Cir. 1993); see also Carr v. Kupfer, 296 S.E.2d 560, 562 (Ga. 1982) ("Absent a contrary public policy, this court will normally enforce a contractual choice of law clause."). Here, the pertinent contractual provision in the Conditions of Carriage states that "[t]hese Conditions of Carriage are governed by and are to be interpreted in accordance with the laws of the state of Texas." Dkt. No. 37-9, p. 12. In light of Georgia choice-of-law jurisprudence, the Court applies Texas law in reaching a decision on the merits of Plaintiffs breach of contract claim. All parties agree that Texas law is, indeed, the proper choice.

**B.    Merits of the Breach of Contract Claim**

To establish a claim for breach of contract under Texas law, a plaintiff must prove "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages." Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex.App.—Houston [1st Dist.] 2002, pet. denied). In other words, for a plaintiff to prove breach of contract, the plaintiff must establish "(1) the existence of the contract sued upon; (2) his compliance with the terms of the contract or that he was ready, willing, and able to comply but has a valid excuse for his nonperformance; and (3) the defendant's breach of the

contract." Stegman v. Chavers, 704 S.W.2d 793, 795 (Tex. App. 1981).

Here, Plaintiffs and the airline entered into a contract when Mr. Benjamin purchased an airline ticket for his daughter over the phone, thereby accepting the airline's Conditions of Carriage. See Dkt. No. 37-7, p. 7 (explaining that a contract between the airline and a party only exists where a party both purchases a ticket and agrees to the airline's Conditions of Carriage). Plaintiffs' breach of contract claim fails because Plaintiffs cannot prove that they were in compliance with the contract, as is required under Texas law. See Stegman, 704 S.W.2d at 795. The Conditions of Carriage clearly state that a ticket is valid "only when used in accordance with all terms and conditions of sale. Terms and conditions of sale include but are not limited to: (1) the passenger's itinerary, as stated on the ticket or in the passenger's reservation record . . ." Dkt. No. 37-7, p. 24. The Conditions of Carriage then specify the actions that would invalidate a ticket, which includes a prohibition of the practice known as "Hidden City/Point Beyond Ticketing," which forbids the "[p]urchase of a fare from a point before the passenger's actual origin or to a point beyond the passenger's actual destination." Id. As is undisputed from the record, such a forbidden action was exactly what Miss Benjamin did.

AO 72A
(Rev. 8/82)

When a passenger fails to comply with the terms set forth in the Conditions of Carriage, the airline reserves the right to "[c]ancel any remaining portions of the passenger's itinerary." Id. at p. 25. Here, Plaintiffs purchased a ticket "from a point before [Miss Benjamin's] actual origin" when they purchased a ticket for Miss Benjamin to fly from Jacksonville to Port-au-Prince through Miami, even though they never intended for her to use the ticket from Jacksonville to Miami. Dkt. No. 37-3, 107:11-12. This practice is expressly prohibited in the airline's Conditions of Carriage and in accord with its policies, the airline cancelled the remainder of Miss Benjamin's ticket. The airline was thus well within its right to cancel Miss Benjamin's ticket, given that she failed to comply with her part of the agreement.

Plaintiffs argue that the doctrine of apparent agency saves their breach of contract claim, for they contend that an airline representative orally informed them that Miss Benjamin could miss the first leg of her flight with no penalty. Dkt. No. 37-3, 106:19-107:4. To prove a claim for apparent agency under Texas law, a plaintiff must show that: (1) he had a reasonable belief that a party was an agent or employee of the principal, (2) such belief was generated by some affirmative conduct on the part of the principal, and (3) one justifiably relied on the representation of authority. Baptist Mem'l Hosp. Sys. v.

Sampson, 969 S.W.2d 945, 949 (Tex. 1998).  Significantly,

Plaintiffs must show that the *airline* engaged in conduct "that

would lead a reasonably prudent person to believe that the agent

has the authority that it purports to exercise."  Corral-Lerma

v. Border Demolition & Envtl. Inc., No. 08-11-00134-CV, 2015 WL

2265082, at *6 (Tex. App. May 13, 2015) citing NationsBank, N.A.

v. Dilling, 922 S.W.2d 950, 953 (Tex. 1996).

Here, Plaintiff has not alleged or shown any evidence from

the airline suggesting that the phone representative had the

authority to make the kind of promise that he made to

Plaintiffs.  In fact, the airline, anticipating liability—or at

least attempts to establish it—for the statements of perfunctory

employees, specifically addressed the issue in the Conditions of

Carriage, stating that "[n]o agent, employee or representative

of American has authority to alter, modify or waive any

provision of the Conditions of Carriage unless authorized in

writing by a corporate officer of American."  Dkt. No. 37-7, p.

23.  Where there are conflicts between the Conditions of

Carriage and the promise of an employee, the Conditions of

Carriage prevail.  See, e.g., Hanson v. Am. W. Airlines, Inc.,

544 F. Supp. 2d 1039, 1043 (C.D. Cal. 2008) (agent's promise

that passenger's bag would be sent to San Francisco for pick up

did not bind the airline even though agent worked at the baggage

claim station because the Conditions of Carriage expressly

stated that no employee could waive the conditions). Plaintiffs have not produced any evidence of any writing from a corporate officer of the airline permitting Miss Benjamin to modify her original ticket. Without such a writing, it was unreasonable as a matter of law for Plaintiffs to rely on the statement of an employee. See Hanson, 544 F. Supp. 2d at 1043. Given the above, it is clear that Plaintiffs cannot succeed on a breach of contract claim. Accordingly, the airline's Motion for Summary Judgment is **GRANTED** as to this claim.

## II. 42 U.S.C. § 1981 Claim

Plaintiffs allege that the airline discriminated against them in violation of 42 U.S.C. § 1981 when the airline subjected them to "unfair policies and practices." Dkt. No. 1, ¶¶ 82-96. In response, the airline avers that Plaintiffs failed to proffer evidence that it discriminated against them on account of their race or national origin, given the facts as alleged. Dkt. No. 37-2, pp. 18-22.

As an initial matter, claims based solely on national origin are not cognizable under 42 U.S.C. § 1981. Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987); Bullard v. OMI Ga., Inc., 640 F.2d 632, 634 (5th Cir. 1981); Bedoya v. Hilti, Inc., 159 F. App'x 91, 92 (11th Cir. 2005). In some contexts, however, "national origin discrimination is so closely related to racial discrimination as to be indistinguishable." Bullard,

640 F.2d at 634. This Court further notes that neither the Fifth Circuit nor the Eleventh Circuit has held that there is a separate and distinct cause of action under 42 U.S.C. § 1981 for national origin discrimination. Id.; see Bedoya, 159 F. App'x at 92. Instead, courts have used national origin discrimination as relevant in determining whether or not racial discrimination in violation of 42 U.S.C. § 1981 occurred. Sinai v. New England Tel. & Tel. Co., 3 F.3d 471, 474-75 (1st Cir. 2003) (affirming that "national origin could be used, together with other evidence, to arrive at a conclusion vis-à-vis race discrimination."); Alvarado v. El Paso Indep. Sch. Dist., 445 F.2d 1011, 1011 (5th Cir. 1971) (finding that a complaint by Mexican-Americans alleging racial and ethnic discrimination "clearly states a cause of action" under the statute."); Short v. Mando Am. Corp., 805 F. Supp. 2d 1246, 1268 (M.D. Ala. 2011) (considering Plaintiff's national origin discrimination as it relates to his race discrimination claim). In light of the aforementioned case law, this Court will consider evidence regarding Plaintiff's national origin discrimination claim as it supports their racial discrimination claim.

In relevant part, 42 U.S.C. § 1981 provides,

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State and Territory to make and
> enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit

AO 72A
(Rev. 8/82)

of all laws and proceedings for the security
of persons and property as is enjoyed by
white citizens, and shall be subject to like
punishment, pains, penalties, taxes,
licenses, and exactions of every kind, and
to no other.

42 U.S.C. § 1981(a). To sustain a cause of action under 42
U.S.C. § 1981, plaintiff must show "(1) that the plaintiff is a
member of a racial minority; (2) that the defendant intended to
discriminate on the basis of race; and (3) that the
discrimination concerned one or more of the activities
enumerated in the statute." Kinnon v. Arcoub, Gopman & Assocs.,
Inc., 490 F.3d 886, 891 (11th Cir. 2007) (quoting Jackson v.
BellSouth Telecomms., 372 F.3d 1250, 1270 (11th Cir. 2004)).
Therefore, "to prevail on a § 1981 claim, a plaintiff must
establish that he was treated differently than other similarly
situated individuals, on account of his race." Kalantar v.
Lufthansa German Airlines, 402 F. Supp. 2d 130, 137 (D.D.C.
2005) (citing Berger v. Iron Workers Reinforced Rodmen Local
210, 843 F.2d 1395, 1413 n. 7 (1988)).

Here, Plaintiffs satisfy the first element to prove a claim
under 42 U.S.C. § 1981 because they are a black family—they are
thus members of a racial minority. See Dkt. No. 37-7, 31:25.
But to prove a violation under § 1981, Plaintiffs must prove
that the airline purposefully discriminated against them because
of their race. See Kalantar, 402 F. Supp. 2d at 137. The

AO 72A
(Rev. 8/82)

airline cancelled Miss Benjamin's ticket for a race-neutral and non-discriminatory reason: Miss Benjamin failed to abide by the terms of the Conditions of Carriage. The Court notes that a contract between the airline and a party only exists when a party both purchases a ticket and agrees to the airline's Conditions of Carriage. Dkt. No. 37-7, p. 7. In the Conditions of Carriage, the airline clearly sets forth the policies regarding a party's use of a ticket, explaining that "[t]ickets for itineraries with more than one flight segment must be used in accordance with the sequence of flights as they appear in the ticketed itinerary and a receipt." Id. at p. 23. The airline further specifies that it reserves the right to cancel a ticket should a party fail to comply with the terms of the Conditions of Carriage. Id. at p. 19.[1]

Here, the airline did not impede Plaintiffs' ability to make a contract; rather Plaintiffs take issue with the airline's enforcement of the Conditions of Carriage, claiming that it was motivated by racial animus. Dkt. No. 1, ¶¶ 82-96. Plaintiffs admit, however, that the airline cancelled Miss Benjamin's ticket for a non-discriminatory reason—that she failed to abide

---

[1] In relevant part, the Conditions of Carriage provide that "[w]here a ticket is invalidated as the result of the passenger's non-compliance with any term or condition of sale American has the right in its sole discretion to: (1) Cancel any remaining portion of the passenger's itinerary, (2) Confiscate unused flight coupons, (3) Refuse to board the passenger or check the passenger's luggage, or (4) Assess the passenger for the reasonable remaining value of the ticket, which shall be no less than the difference between the fare actually paid and the lowest fare applicable to the passenger's actual itinerary." Id.

by the terms of the Conditions of Carriage. Indeed, Mr. Benjamin agreed that the airline cancelled his daughter's ticket because she failed to appear for the first leg of her flight from Jacksonville to Miami, dkt. no. 37-3, 118:2, and Miss Benjamin, confirmed that she did not fly from Jacksonville to Miami as scheduled due to "convenience," dkt. no. 37-5, 72:5.

Significantly, Plaintiffs made and entered into a contract with the airline without any issue on account of their race or national origin, given that they purchased Miss Benjamin's ticket via the telephone. Dkt. No. 37-3, 105:18-107:16. A careful review of the record indicates that it is devoid of evidence of discriminatory intent on the part of the airline.

However, there is an additional aspect to the Plaintiffs claims. Plaintiffs claim that the airline purposefully discriminated against them, based on their race and national origin, when the airline's representative saw them at the Miami airport, forced them to purchase a standby ticket, and then failed to book Miss Benjamin on the next flight to Haiti. Dkt. No. 44-2, pp. 7-8. Plaintiffs, however, fail to provide any evidence that the enforcement of the airline's policies was anything but race neutral. See Dkt. No. 37-7, pp. 5-6.[2]

_____

[2] The airline's oversold policy dictates that passengers are denied boarding in the following order: "(1) Passengers who do not meet the minimum check-in requirement; (2) Passengers without assigned seats, based on check-in time for American Airlines Flights and booking date for American Eagle flights who do not qualify for one of the categories below; (3) Passengers with assigned

Plaintiffs cannot merely allege that they were discriminated against on account of their race and national origin without providing evidence of discriminatory intent. See Kalantar, 402 F. Supp. 2d at 137 (although appellant claims that he was singled out for a more extensive search of his luggage due to his race and religion he failed to "provide any evidence that shows, or even implies, that race was the reason he was subjected to a more extensive search."). The only evidence they offer is the one comment by Mr. Gallo, the Miami employee who, after cycling through the same conversation with them, implied that they may need an interpreter. Dkt. No. 37-3, 118:5-18. Here, Mr. Benjamin states that he was "humiliated," id. at 120:15, by Mr. Gallo's comment that he could not "speak English well." Id. at 118:10. Such a comment is insufficient to show that their race or national origin was the reason for the airline's cancellation of Miss Benjamin's plane ticket. Indeed the ticket in question was cancelled by an airline representative approximately twenty-four hours prior to Plaintiffs' arrival in Miami by an agent who never spoke to, much less saw, the Benjamin family. Dkt. No. 37-10, ¶¶ 4-6.

---

seats, based on check-in time for American Airlines flights and booking date for American Eagle Flights who do not qualify for one of the categories below; (4) AAdvantage/AAdvantage Gold membership; (5) Executive Platinum, Platinum, Emerald and full fare coach passengers; (6) Business class passengers; (7) Business Elite passengers; (8) First Class passengers; and (9) Passengers such as the elderly, the disabled, or children traveling alone who will experience a severe hardship as a result of being denied boarding." Id.

Obviously, Plaintiffs interpreted the Miami agent's statements about their English proficiency as rude. Even if it were so construed, it falls far short of constituting any evidence of discrimination. A single insult, without more in the form of attendant circumstances or otherwise, does not provide the foundation for a claim under 42 U.S.C. § 1981. Compare Sawyer v. Sw. Airlines Co., 243 F. Supp. 2d 1257, 1270 (D. Kan. 2003) (explaining that the use of the phrase "eenie, meenie, minie, moe" in conjunction with the following circumstances—(1) the black plaintiffs were the only non-seated customers; (2) white passengers laughed at the comments and at the plaintiffs; (3) a male flight attendant then patronized one of the plaintiffs—could support a claim under 42 U.S.C. § 1981), and Shaffy v. United Airlines, Inc., 360 F. App'x 729, 730 (9th Cir. 2009) (granting United Airlines' motion for summary judgment where appellant failed to provide "evidence that [her] Iranian heritage played any role in the incident or that the airline was even aware of it" when United Airlines decided to remove her from the flight after she failed to follow crew instructions.), with Dennis v. Delta Airlines, No. 10 CV 973, 2011 U.S. Dist. LEXIS 115951, at *23-24 (E.D.N.Y. Aug. 18, 2011) ("even if plaintiff were able to establish a prima facie case of discrimination by showing that she was similarly situated to the white passengers ahead of her who were allowed to board the

flight, plaintiff's section 1981 claim still could not withstand defendant's motion for summary judgment" because defendant "set forth a legitimate non-discriminatory reason for not allowing plaintiff to board the flight . . . the gate agent did not allow plaintiff to board the flight because plaintiff arrived late to the gate and the flight was full when plaintiff sought to board.").

In marked contrast to the handling of the situation in Sawyer, here, Plaintiffs admit that the airline was so concerned that the rest of the Benjamin group make their flight that a manager procured a wheelchair for the ailing Mrs. Benjamin, and personally escorted them through security and to their flight, to ensure that they boarded in a timely fashion. Dkt. No. 37-6, 48:10-49:18. Like in Dennis, the airline followed established protocol in finding an available seat for Miss Benjamin. See Dkt. No. 37-7, ¶¶ 5-10. While the airline perhaps could have communicated the fact that she was number twenty-five on the stand-by list in a clearer fashion, there is nothing discriminatory in applying both a national origin and race-neutral policy in accommodating the needs of twenty-four other passengers who were placed on the stand-by list prior to Miss Benjamin. See id. While this Court understands the plight caused by disruptions to a scheduled trip, Plaintiffs failed to offer evidence that they were treated differently than others

AO 72A
(Rev. 8/82)

who were similarly situated. Furthermore, they offered nothing more than a comment which, viewed at its worst, was rude. Accordingly, given the facts as alleged, the airline's Motion for Summary Judgment pursuant to 42 U.S.C. § 1981 is **GRANTED**.

## III. 42 U.S.C. § 1985(3) Claim

Plaintiffs assert that the airline conspired against them, in violation of 42 U.S.C. § 1985(3). Dkt. No. 1, ¶¶ 97-114. In response, the airline avers that Plaintiffs failed to proffer evidence to sustain a claim of civil conspiracy, much less a claim based upon conspiracy on account of their race or national origin, under 42 U.S.C. § 1985(3). Dkt. No. 37-2, pp. 22-24. The statute under which Plaintiffs assert their federal claim provides,

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation against any one or more of the conspirators.

42 U.S.C. § 1985(3). In relevant part, 42 U.S.C. § 1985(3) requires:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott, 463 U.S. 825, 828–29 (1983). As part of the second element, there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Here, Plaintiffs failed to proffer evidence of an agreement, let alone a 'meeting of minds,' to fulfill their burden of proving that the airline conspired against them. See Fulwood v. Fed. Bureau of Prisons, 568 F. App'x 753, 756 (11th Cir. 2014) ("It is not enough to simply aver that a conspiracy existed. A plaintiff must instead show that the parties reached an understanding to deny the plaintiff his rights."); Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla., 956 F.2d 1112, 1122 (11th Cir. 1992) (explaining that when a party alleges conspiracy, "the linchpin . . . is agreement."). Given that

Plaintiffs failed to show an agreement—much less a racially motivated agreement to deny them their right to travel—this Court cannot find evidence of a conspiracy by the airline. Furthermore, the Court notes it would be impossible for the airline to commit a conspiracy with itself, given the undisputed facts in this case. See McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000)(en banc) (quoted in Grider v. City of Auburn, 618 F.3d 1240, 1261 (11th Cir. 2010) ("a corporation cannot conspire with its employees and its employees, when acting in the scope of their employment, cannot conspire among themselves.").

In the case at hand, there is no evidence that the representative who cancelled Miss Benjamin's ticket was not acting within the scope of his authority. Indeed, it would seem clear that the representative acted *within* the scope of employment by cancelling Miss Benjamin's ticket on the basis of her failure to abide by the Conditions of Carriage. Moreover, counsel for Plaintiffs conceded at the July 30, 2015, Motion Hearing that he could not offer proof that the airline conspired against Plaintiffs and that it would be problematic to prove such a claim. Dkt. No. 51.

**IV. Title II Claim**

Plaintiffs argue that the airline should be held liable for violations of Title II of the Civil Rights Act of 1964. Dkt.

AO 72A
(Rev. 8/82)

No. 1, ¶¶ 69-81. In response, the airline avers that the protection of Title II does not apply to airports because they are not considered a "public accommodation" under the pertinent provisions of the law. Dkt. No. 37-2, pp. 24-25. In relevant part, Title II of the Civil Rights Act of 1964 states that "all persons shall be entitled to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion or national origin." 42 U.S.C. § 2000a(a). Specifically, Title II prohibits discrimination or segregation in "[e]stablishments affecting interstate commerce or supported in their activities by State action as places of accommodation; lodgings; facilities principally engaged in selling food for consumption on the premises; gasoline stations; places of exhibition or entertainment; other covered establishments." 42 U.S.C. § 2000a(b).

An "airport" is not a covered establishment under Title II. See 42 U.S.C. §§ 2000a(b)(1)-(4). Case law does not extend the protection of Title II to airports. See, e.g., Huggar v. Nw. Airlines, Inc., No. 98 C 594, 1999 U.S. Dist. LEXIS 1026, at *11 (N.D. Ill. Jan. 27, 1999) (finding that "Title II of the Civil Rights Act of 1964 does not govern aircraft."); Kalantar, 402 F. Supp. 2d at 137-39 ("among the four categories of public

AO 72A
(Rev. 8/82)

accommodations provided by Title II—places of lodging, places of eating, places of entertainment, and establishments located within or surrounding these other three types of premises—none even remotely resembles an airline, or indeed any other vehicle or mode of transportation."). Moreover, at the July 30, 2015, hearing, counsel for Plaintiffs conceded that he was unable to find contrary authority to refute the proposition that Title II does not extend to airports. Dkt. No. 51.

### CONCLUSION

Plaintiffs were unable to produce evidence that would create a question of material fact as to the claims in this suit. Accordingly, for the reasons set forth above, the airline's Motion for Summary Judgment (Dkt. No. 37) is **GRANTED** in its entirety. The Clerk of Court is **DIRECTED** to enter the appropriate judgment.

**SO ORDERED**, this 15TH day of December, 2015.


LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)